## Case No. 4,104.
### The D. S. STETSON.
·[4 Ben. 508.] [1]

District Court, S. D. New York. Feb., 1871.

COLLISION IN THE KILLS—STEAMER AND SCHOONER — CHANGES OF DIRECTION IN A CHANNEL — BURDEN OF PROOF.

1. A steam-tug and a schooner came in collision in the day time, in a narrow channel. The steamer set up that the collision was caused by the schooner's changing her course: *Held*, that the tug was prima facie liable, and that the burden of making out a defence was on her.

2. On the evidence, the schooner made no changes of course except such as were proper and necessary, with the wind as it was, in the channel, and those in charge of the tug were bound to suppose she would make such changes, and be prepared for them.

·3. The tug was liable for the collision.

In admiralty.

C. Donohue and W. J. Haskett, for libellants.

Emerson, Goodrich & Wheeler and R. D. Benedict, for claimants.

BLATCHFORD, District Judge. This libel is filed by the owners of the schooner T. P. Abell, to recover for the damages sustained by them through a collision between that vessel and a barge in tow of the steam-tug D. S. Stetson, on the 1st of May, 1868, about half-past six o'clock, a. m., in the Kills, between Bergen Point light and the corner stake, and off Shooter's Island. The schooner was going to the westward, to Elizabethport, and was sailing close-hauled, the wind being a little east of north. The tug, with a barge on her port side, in tow, was going to the eastward, from Elizabethport. The barge projected some 20 feet ahead of the tug. The starboard bow of the barge struck the starboard bow of the schooner, and the schooner was crushed in, so that she sank in a few minutes. The tide was strong ebb, running to the eastward.

On the part of the schooner, it is contended that she was upon the regular course through

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

the channel between Shooter's Island and Staten Island, with the wind as it was, and that, at the time of the collision and for some time before, she was laying her course north, northwest or thereabouts, for the buoy at the corner stake, around which she would have to pass. The defence set up in the answer, on the part of the tug, is, that the schooner, after rounding Shooter's Island, kept to the southward, to avoid a pile of stones which ran out from that island, "and then headed up again to the northward," and then "suddenly sheered again to starboard, and then again to port; that she thus made several changes in her course, during which time the steamer gave several single whistles, keeping her course, till the master of said steamer, fearing a collision, stopped his engine, but the schooner again sheered to port and ran across the steamer's bow, when the barge struck her."

The tug is prima facie liable for the collision, and is to make out this defence by proof. She has not done so, in my judgment. On the contrary, the weight of the evidence is, that the schooner made no changes in her course, except such as were proper and necessary, with the wind as it was, in the channel she was in. Those changes being a part of the proper navigation of the schooner, were changes which the persons in charge of the tug were bound to know the schooner would make, and it was their duty to be prepared for them. On the evidence, the last of those changes was to a course about north northwest, and which would carry the schooner direct to the buoy, and was made at a sufficient distance off from the tug to have enabled the latter, with ordinary care, to have avoided the schooner. The pilot of the tug is shown, from his language at the time of the collision, to have acted on the idea that it was the duty of the schooner to keep out of the way of the tug. The fact that the schooner kept her course after she got upon it for the buoy some time before the collision, and down to the time of the collision, is not only shown by the witnesses who were on the schooner, but by two witnesses who were on the shore on Staten Island and unconnected with the schooner.

There must be a decree for the libellants, with costs, with a reference to a commissioner to ascertain the damages.